```
      IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MARYLAND

                                  :
KO-ME, LLC
d/b/a Mile High Club              :

     v.                           :   Civil Action No. DKC 16-1174

                                  :
PRINCE GEORGE'S COUNTY, MARYLAND
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case raising constitutional challenges to zoning ordinances is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Prince George's County (the "County"). (ECF No. 6). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the County's motion will be granted.

**I.   Background**

This action is one of a series of cases brought by adult entertainment establishments located within the County challenging two recent County ordinances (CB-46-2010 and CB-56-2011) that restrict adult entertainment businesses (the "ordinances"). An earlier opinion summarized the ordinances' restrictions:

> [CB-46] banned "adult entertainment" businesses from being located anywhere in the County but Zone I-2, an industrial zone. §§ 27-461, 473. Additionally, adult

>    entertainment businesses could only operate between 5:00 PM and 3:00 AM, must be located at least one thousand (1,000) feet from any school, or any other building or use providing adult-oriented performances, and at least one thousand (1,000) feet from any residential zone or land used for residential purposes in any zone.  § 475-06.06.  Establishments "providing adult-oriented performances lawfully established, operating and having a validly issued use and occupancy permit" at the time of CB-46's enactment had until May 1, 2013 to conform to the new use and location requirements.
>    CB-56 was adopted by the County Council on November 15, 2011.  . . .  "Adult entertainment" remained permitted solely in the I-2 zone, but CB-56 permitted "adult entertainment" businesses currently existing and operating with a valid use and occupancy permit in zones C-S-C and C-M (commercial zones), and I-1 and U-L-I (industrial) to continue to operate as nonconforming provided they obtain a Special Exception. Applications for such an exception were due by June 1, 2012.  CB-56 eliminated the May 1, 2013 deadline to conform.  Based on Plaintiffs' business locations, they were each rendered nonconforming by CB-56 and must obtain a Special Exception to remain in their present locations.

*Maages Auditorium v. Prince George's Cty.* (*Maages I*), 4 F.Supp.3d 752, 759 (D.Md. 2014) (citations omitted).  On April 1, 2016, the County issued a cease and desist letter to Plaintiff KO-ME, LLC, doing business as the Mile High Club ("Mile High").  (ECF No. 1-3, at 16).  The letter ordered that Mile High "cease and desist all adult entertainment activities no later than 5:00 p.m. Friday, April 8, 2016."  (*Id.*).

On April 20, 2016, Mile High filed a complaint seeking a declaratory judgment that CB-46 and CB-56 are unconstitutional. (ECF No. 1). Mile High purported to file the complaint on behalf of itself; "John Doe," a representative patron of Mile High; and "Jane Doe," a representative performer at Mile High. On May 24, an amended complaint was filed, which replaced as a plaintiff Jane Doe with Fantasia Hopkins, an "exotic dancer, who has danced at Mile High for approximately eight (8) years" (collectively, the "Plaintiffs"). (ECF No. 5 ¶ 9). The amended complaint asserts five counts: violation of the Equal Protection Clause (Count I); violation of "constitutional rights" under the First and Fourteenth Amendments (Counts II and III); an unconstitutional taking of property (Count IV); and a "failure to provide for adequate alternative avenues of communication as it relates to theatres and/or playhouses" (Count V). On June 7, the County filed the pending motion to dismiss or, in the alternative, for summary judgment. (ECF No. 6). Plaintiffs responded in opposition (ECF No. 7), and the County replied (ECF No. 8).

**II.  Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.[1]  *Presley v. City of*

---

[1] The County moves to dismiss or, in the alternative, for summary judgment.  A court may, without converting a motion to

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty.*

---

dismiss into a motion for summary judgment properly "take judicial notice of matters of public record" and "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted). Accordingly, the County's motion will be analyzed as a motion to dismiss.

4

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Ultimately, a complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**III. Analysis**

A brief review of recent decisions in cases analyzing the ordinances' constitutionality is prudent before addressing the instant case. First, in *Maages I*, the court granted judgment for the County on the following claims: violation of the Equal Protection Clause; lack of required evidentiary support for the ordinances; lack of adequate procedural safeguards in the special exception process; vagueness; and unbridled administrative discretion. *Maages I*, 4 F.Supp.3d at 760, 779. In *Maages v. Prince George's Cty.* (*Maages II*), No. DKC-13-1722, 2016 WL 827385, at *2-4 (D.Md. Mar. 3, 2016), the court held that the ordinances left open the constitutionally-required alternative avenues of communication and did not violate Maryland's amortization doctrine. Then, in *Nico Enters., Inc.*

*v. Prince George's Cty.*, No. DKC-15-2832, 2016 WL 2770519, *3-7 (D.Md. May 13, 2016), the court reaffirmed the analysis in *Maages I* and *II*, and rejected the plaintiff's argument that the ordinances were unconstitutionally overbroad. The court also held that the plaintiff did not have standing to bring a claim of vagueness, but noted that the plaintiff "failed to allege plausibly that the term 'premise' is unconstitutionally vague." *Id.* at *7-8.

Here, the individual allegations in the amended complaint are not entirely clear. Some "counts" assert multiple claims or theories of a constitutional violation, including those beyond what is included in the heading identifying the count. Others assert only portions of a claim that is included across multiple counts. Regardless, Plaintiffs fail to articulate how the facts and theories it puts forth warrant a different decision than that in *Maages* and *Nico*. Plaintiffs' references to artistic works and its conclusory assertion that the primary purpose of the entertainment at Mile High, including the dancing of Ms. Hopkins, "is to convey exotic messages and make money [and] not to sexually arouse or excite another person" are insufficient to state a claim that the ordinances run afoul of the constitution, as discussed at length in *Maages* and *Nico*. Although Plaintiffs emphasize that dancers at Mile High do not perform lap dances, they fail to articulate how this distinction is relevant to the

constitutional questions at hand or the language of the ordinances.

Plaintiffs also attempt to distinguish this case by asserting that the ordinances violate the Equal Protection Clause because "the legislation allows other adult entertainment business[es] to apply for a 'special exception' but denies Mile High and other establishment[s] not listed as an 'auditorium, private club or lodge," to apply for the same special exception." (ECF No. 5 ¶ 60). Specifically, the ordinances provided that an establishment in certain zones "with a valid use and occupancy permit for an auditorium, private club or lodge that included activity that meets the definition of 'adult entertainment' may continue upon approval of a Special Exception," an application for which must have been filed and accepted by June 1, 2012. (ECF No. 1-3, at 11). Plaintiffs argue that Mile High was prohibited from applying for a Special Exception because it has a "restaurant/night club" use and occupancy permit. (*Id.* at 15). As discussed in *Maages I*:

> Plaintiffs do not contend that they are members of any suspect class, and consequently, the claim is subject to rational basis review. Rational basis review requires that legislative action, "[a]t a minimum, . . . be rationally related to a legitimate governmental purpose." *Clark v. Jeter,* 486 U.S. 456, 461 (1988). There is a "strong presumption of validity" when examining a statute under rational basis review, and the burden is on the party

7

>challenging the validity of the legislative action to establish that the statute is unconstitutional. *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314-15 (1993). Finally, when undertaking rational basis review, the party defending the constitutionality of the action need not introduce evidence or prove the actual motivation behind passage, but need only demonstrate that there is some legitimate justification that could have motivated the action. *Id.* at 315.
>
>As discussed above, Plaintiffs have made no demonstration that the zoning ordinances are motivated by unconstitutional considerations. While Defendant has not presented evidence of its motivations either, in an Equal Protection challenge under rational basis review, the government need only demonstrate there is some legitimate justification that could have motivated the action. Defendant has made its showing under Fourth Circuit jurisprudence to satisfy the First Amendment's requirement that the law advances a substantial governmental interest and consequently has met Equal Protection's rational basis standard. *See [City of] Renton [v. Playtime Theaters, Inc.]*, 475 U.S. [41,] 55 n.4 [(1986)].

*Maages I*, 4 F.Supp.3d at 776.  The analysis in *Maages I* is persuasive here, and Plaintiffs have not put forth any facts stating a plausible Equal Protection claim.[2]

---

[2] The County argues that Mile High does not have standing to bring this Equal Protection claim because it did not apply for a Special Exception and therefore did not suffer a concrete injury.  In support, the County cites to *Doe v. Virginia Department of State Police*, 713 F.3d 745 (4th Cir. 2013), in which the United States Court of Appeals for the Fourth Circuit assessed the standing of a plaintiff challenging a state statute limiting sex offenders' access to certain public properties. The Fourth Circuit held that the plaintiff did not have standing because she did not petition the state authorities for access,

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by the County will be granted.[3]  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

as was allowed under the statute.  Here, on the other hand, Mile High contends that it was not allowed to apply for a Special Exception under the plain terms of the ordinances.  Accordingly, *Doe* is inapposite, and Mile High has standing to challenge the Special Exception provision of the ordinances.

[3] Because the amended complaint will be dismissed for failure to state a claim, it is not necessary to reach the County's statute of limitations or laches arguments.